IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Albert Lee Evans, #260409, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>Leroy Cartledge, Warden )<br>of McCormick Correctional )<br>Institution, )<br>)<br>Respondent. )<br>) | Civil Action No.8:08-88-GRA-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. Entry # 12).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on January 14, 2008.[1] On May 12, 2008, the respondent moved for summary judgment. By order filed May 13, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On May 28, 2008, the petitioner filed a response.

**PROCEDURAL FACTS**

The petitioner is a state prisoner currently incarcerated in the McCormick Correctional Institution. In May 1999, the petitioner was indicted for murder, first degree

---

[1] There is no prison mailroom stamp on the envelope which contained the petition. Further, while the petitioner is incarcerated in McCormick with a zip code of 29899, the petition was mailed from Anderson with a zip code of 29621. Thus, it appears that the petition was not mailed from prison and therefore the petitioner should not be given the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988)(holding document considered filed upon delivery to prison officials for forwarding to court).

burglary, and possession of a firearm during the commission of a violent crime. (App. 12.) The petitioner was represented by attorney Robert A. Gamble. (App. 1.)

On August 9-11, 1999, the petitioner was tried by a jury and found guilty as charged. (App. 358-359.) South Carolina Circuit Court Judge J.C. Nicholson sentenced the petitioner to life without parole for the murder, thirty years for the burglary, and five years for the weapons charge. (App. 365.) All sentences were to run concurrently. (*Id.*) The petitioner filed a timely appeal.

Appellate Defender Aileen P. Claire of the South Carolina Office of Appellate Defense represented the petitioner on appeal. The petitioner raised the following issue on an *Anders* brief: "Was Appellant entitled to a directed verdict of not guilty of burglary because he was a designated resident in the lease to the subject dwelling?" (Return Attach. 1.) The South Carolina Court of Appeals dismissed the appeal by written order on January 26, 2001, after the appeal was voluntarily withdrawn by the petitioner. (Return Attach. 2.) The remittitur was also entered on January 26, 2001. (*Id.*)

On May 11, 2001, the petitioner filed an application for post- conviction relief (PCR"). (App. 368-371.) On March 5, 2003, he filed a pro se notice of motion and motion to amend his PCR application. (App. 446.) Then on July 11, 2003, and August 23, 2005, the petitioner filed a second and third amended applications. (*Id.*)

An evidentiary hearing was held on August 30, 2005, before South Carolina Circuit court Judge Lee S. Alford. (App. 374-444.) The petitioner was present at the hearing and was represented by attorney David Seay, Jr. At the hearing, the petitioner testified and alleged that he received ineffective assistance of counsel because his trial attorney failed to: (1) conduct a sufficient investigation; (2) request a jury charge on voluntary manslaughter; (3) move the trial court for an in camera hearing on the competency of Reginald Pressley and Regina Evans; (4) object to the admissibility of the testimony of W.

2

M. Stevenson and Malisa Partain; (5) move the trial court to secure, review, and preserve for the record the notepads provided to jurors during trial; and (6) object to jurors who withheld information and were exposed to outside influences. Post-hearing briefs were filed. On November 28, 2005, Judge Alford filed an order denying and dismissing the petitioner's amended PCR application. (App. 446-461.) The petitioner filed a motion to alter or amend the order on December 5, 2005. (App. 462.) On December 20, 2005, Judge Alford denied the motion. (App. 466-67.)

The petitioner filed a timely appeal to the South Carolina Supreme Court. On June 16, 2006, appellate Defender Robert M. Pachak of the South Carolina Office of Appellate Defense filed a *Johnson* petition for writ of certorari on behalf of the petitioner raising the following ground: "Whether there was any evidence to support the PCR judge's findings that defense counsel was ineffective in failing to request a jury charge on voluntary manslaughter?" (Pet. 2.) The petitioner also filed a pro se response on July 25, 2006, raising four issues:

> I. Did the PCR court error in ruling Petitioner was not denied the protections of the federal constitutions Sixth and Fourteenth Amendments of effective assistance of counsel , a fair trial , impartial jury , due process and equal protection of the law, and Article I, section 14 of the South Carolina Constitution.
>
> II. Did the PCR Court err in ruling Petitioner was not denied 6th and 14th Amendment and S.C. Constitution Article I, Section 14 when trial counsel failed to object to Solicitor White bringing pencils and notepads into court for jury's use without notice to counsel without instructions from court and the court retrieving notebooks during breaks.
>
> III. Did the PC Court err in ruling Petitioner was not denied due process when the prosecutor presented false and misleading evidence during the trial and whether counsel was ineffective in failing to object to the evidence.
>
> IV. Did the PCR Court err in ruling Petitioner was not denied the effective assistance of counsel due to counsel's failure to request a voluntary manslaughter charge? Pro Se Petition for Writ of Certiorari. On September 28, 2007, the South Carolina

3

> Court of Appeals, after remittance from the South Carolina Supreme Court, entered its order denying the petition and granting counsel's request to be relieved. On October 16, 2007, the remittitur was entered.

(Return Attach. 4.)   On September 28, 2007, the South Carolina Court of Appeals denied the petitioner's petition and sent down the remittitur on October 16, 2007.  (Return Attach. 5.)

In the instant habeas petition, the petitioner has raised the following grounds for relief:

> **Ground One:**  Was there any evidence to support the PCR judge's finding that the defense counsel was not ineffective in failing to request and instruction on voluntary manslaughter?
> **Supporting Facts:** Jury could reasonably conclude that Petitioner committed voluntary manslaughter and based on all the evidence presented at trial Petitioner trial counsel should have requested the lesser included charge and trial judge should have charged it.
>
> **Ground Two:**  Ineffective Assistance of Counsel.
> **Supporting Facts:**  Petitioner stated at the hearing that an impropriety occurred respecting the selection of members of the jury and counsel was ineffective for impaneling a juror who failed to disclose that she was an attorney. Alexandria Stathakis testified at the hearing that she served on Petitioner's jury and was an attorney at the time.
>
> **Ground Three:**  Ineffective Assistance of Counsel.
> **Supporting Facts:**   Petitioner stated at the hearing that trial counsel failed to object to the trial court abusing its discretion by allowing Solicitor Druanne White to bring pencils and pads into the courtroom, request the court to give same to the entire jury to take notes of the whole trial.
>
> **Ground Four:**  Ineffective Assistance of Counsel.
> **Supporting Facts:**   Petitioner was denied ineffective assistance of counsel when the prosecutor presented false and misleading evidence to the court during trial and was denied due process of law when counsel failed to object to this false misleading evidence.

(Pet.6-11.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252.

Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**STANDARD OF REVIEW IN § 2254 PETITIONS**

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Humphries v. Ozmint*, 397 F.3d 206, 216 (4th Cir. 2005) (*quoting Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must

6

conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." *McHone v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004).

**Exhaustion and Procedural Bar**

A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement

7

> unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing

9

of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

He is required to prove that specific errors infected the trial and were of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152 (1982).

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta.  *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## **DISCUSSION**

**Ground One**

In Ground One, the petitioner alleges that trial counsel was ineffective for failing to request an instruction on voluntary manslaughter.  The petitioner raised this issue in his PCR application and the PCR Court found trial counsel was not ineffective. (App. 456-461.) The respondent contends that the state court decision was a reasonable application of state law because there is no evidence in the record which would have entitled the petitioner to a charge on voluntary manslaughter.   The undersigned agrees.

To prove ineffective assistance of counsel, the petitioner must show that: (1) trial counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient when it falls below "an objective standard of reasonableness."  *Id.* at 688.  An attorney's performance prejudices the defense when his errors are "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.

In South Carolina, the law to be charged in a case is determined from the evidence presented at trial.  *State v. Knoten*, 555 S.E.2d 391, 394 (S.C. 2001).  The jury should be charged with only the applicable law.  *Id.* at 394.   The trial court is required to charge a jury

11

on a lesser-included offense "if there is any evidence from which it could be inferred the lesser, rather than the greater, offense was committed." *State v. Gourdine*, 472 S.E.2d 241, 242 (S.C. 1996). However, the charge need not be given "where it clearly appears that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter." *State v. Pittman*, 647 S.E.2d 144 (S.C. 2007) (internal citation omitted). The facts must be viewed in the light most favorable to the defendant when deciding whether the evidence requires a charge of voluntary manslaughter should be given. *Knoten*, 555 S.E.2d at 394.

"Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Cole*, 525 S.E.2d 511 (S.C. 2000). "Both heat of passion and sufficient legal provocation must be present at the time of the killing. The provocation must be such as to render the mind of an ordinary person incapable of cool reflection and produce an uncontrollable impulse to do violence." *State v. Smith*, 609 S.E.2d at 530. If an adequate legal provocation does not exist, the killing, even in the heat of passion is murder and not manslaughter. *State v. Norris,* 168 S.E.2d 564 (S.C. 1969). Further, if at the time of the killing passions have cooled or sufficient time has passed so that the passions of an ordinary, reasonable person would have cooled, then the killing is murder and not manslaughter. *Smith,* 609 S.E.2d at 530.

At trial, Jamie Watt testified that the victim, Carrie Pressley, had broken off her relationship with the petitioner in January or February of 1999. (App. 93.) Watt testified that he and Carrie started a relationship in February 1999. (App. 92.) Watt saw Carrie almost every day and testified that he had met the petitioner a few times. (App. 92- 93.) Watt testified that the petitioner did not like that Carrie had ended their relationship and called Carrie on her cell phone and her home repeatedly. (App. 94.) Watt heard the petitioner on Carrie's telephone threatening to kill her. (App. 94-95.) Watt testified that the petitioner also came by Carrie's home a couple of times each week and Carrie either closed the door, told him to leave through the door, or called law enforcement officers. (App. 95.)

On the day Carrie died, Watt testified that the petitioner had called Carrie numerous times and threatened to kill her. (App. 97-98.) Watt also testified that he argued with the petitioner on the telephone and the petitioner threatened him. (App. 98.) Watt testified that the petitioner telephoned Carrie approximately seven times between 11 p.m. and midnight and Watt told him that Carrie was not at home. (App. 99.)  Also, between 11 p.m. and midnight, Watt testified that he walked Carrie's nephew and his friend across the street to a store. Carrie's nephew and his friend were staying in Carrie's home while Carrie's mother played bingo. (App. 100-101.)  Watt stated that he saw the petitioner standing behind a trash can at the store across the street from Carrie's home, but they did not speak. (App. 99-100; 111-112.)

Watt also testified that night someone knocked at the window and front door of Carrie's home. Watt testified that he saw the petitioner and Carrie called the police. (App. 101.)  The police responded and talked with Carrie and left. (*Id.*)  Watt testified that Carrie's mother returned with Carrie's car and picked up Carrie's nephew. (App. 101.) Approximately fifteen minutes later, Watt testified that he and Carrie were in the back bedroom around 12:45 to 1:00 a.m. when they heard a loud thump. (App. 103.)  Watt testified that he tried to close the bedroom door but the petitioner had his foot between the door and the door frame. (App. 104.) Watt testified that the petitioner then fired through the bedroom door and kicked the door off its hinges. (App. 104.) Watt stated that he used the door to knock the petitioner down, but the petitioner scrambled to his feet. Watt testified that Carrie asked, "Why don't you quit this, Al?" and the petitioner shot and killed her. (App. 105.)  Watt testified he was wearing boxers at the time and Carrie was wearing a t-shirt. (*Id.*)  Watt testified that neither he nor Carrie were armed and the petitioner did not speak during the incident. (App. 113.)

William Baskin, a City of Anderson police officer, testified that doorplate of the door leading into the apartment from outside had been kicked out and the bedroom door was

completely off of its hinges. (App. 167-68.) He also testified that he saw bullet holes in the bedroom door and the ceiling of the bedroom. (App. 167-68.)

Michael Chamblee testified that his aunt lives across the street from Carrie's home. (App. 197-198.) Chamblee testified that the petitioner and Carrie had ended their relationship two to three months before Carrie's death but the petitioner continued to call Carrie and knock on her door. (App. 198.) Chamblee testified that at approximately 11:00 p.m. on the night of the Carrie's death, he spoke with the petitioner while he was sitting on his aunt's porch. He stated the petitioner wanted to call Carrie and used the telephone at the store. (App.. 200-202.) He testified that the petitioner also knocked on Carrie's door once. (App. 201.) Chamblee testified that the petitioner had a handgun in his pants and asked him if Chamblee's "legs were strong." Chamblee thought the petitioner was asking him about kicking in Carrie's door. (App. 201-202; 207.)

Regina Evans, the petitioner's niece, also testified that the petitioner told her he called Carrie on the night of her death and threatened to kill her and that he had gone to Carrie's home and shot her twice. (App. 209; 212.) She also testified that the petitioner said he did not mean to kill Carrie. (App. 209.)

Trumel Cherry, Carrie's niece, testified that the after ending the relationship, Carrie was initially nice to the petitioner and gave him rides and cut his hair but did not allow him to spend the night in her home. (App. 232.) Cherry testified that after the petitioner starting calling Carrie, she told the petitioner she had had enough. The petitioner then began to call Carrie every day "and stuff, and harassing her all the time." (App. 233.) Cherry heard the petitioner threaten to kill Carrie. (App. 233.) Cherry testified that on the night if the shooting, she saw the petitioner coming from behind Carrie's home. Cherry stated that it looked as though the petitioner was trying to get in through a window. (App. 233; 237-238.) Cherry testified that Carrie's nephew was still at Carrie's home when they saw the petitioner that night because Carrie's mother had not yet returned Carrie's car and picked up Carrie's

nephew. (App. 99; 101; 238-240.) The petitioner did not testify at trial or give a statement to officers about the events leading to Carrie's death.

Reviewing the evidence, the undersigned concludes that the petitioner was not entitled to a voluntary manslaughter charge. "Adultery may, in some instances, serve as 'sufficient legal provocation.'" *State v. Gadsden,* 442 S.E.2d 594, 597 (S.C. 1994). However, "marital infidelity support[s] a charge of marital manslaughter only when the killer finds a spouse and paramour in a "guilty embrace or flagrantly suggestive situation." *State v. Cooley,* 536 S.E.2d 666, 668 (2000)(interanl citation omitted). Sufficient legal provocation of this nature is limited to adultery or a sexual betrayal of the marital relationship.  *See* McAninch & Fairey, The Criminal Law of South Carolina, 234 (4th ed. 2002)("Adequate provocation in this sort of situation is limited to adultery, defined as a sexual betrayal of the marital relationship."). The state introduced considerable evidence that a few months prior to the shooting, the relationship between Carrie and the petitioner had ended, and the petitioner was unreconciled to the breakup. Therefore, even if the evidence supported an inference that the petitioner observed Watt in his boxers and Carrie in her t-shirt by looking through the window, this does not constitute sufficient legal provocation.

Additionally, as noted above the killing must happen so soon after the discovery of the adultery that the spouse did not have time to cool off. *State v. Gadsden,* 442 S.E.2d 594 (1994)). The evidence shows that the petitioner was aware of Carrie and Watt's relationship before the night of Carrie's death. The petitioner had threatened Carrie's life for two to three months and became progressively more violent and threatening. On the night of the crime, he had made repeated threats against Carrie's life and waited for fifteen minutes until the police left and then kicked in the door of her home and shot Carrie in her bedroom. Where as here, a defendant lays in wait or searches for "the guilty embrace" the crime of murder will not be reduced to voluntary manslaughter. *Gadsden,* 442 S.E.2d at 597. *See also State v. Kornahrens,* 350 S.E.2d 180, 184 (1986) (holding where defendant

went to the scene in middle of night armed with gun and bayonet, lay in wait for victims, then surprised all three and killed them, there is no evidence the murders were provoked despite evidence of domestic strain).

The petitioner has failed to show any evidence that he acted in the heat of passion or that there were actions by the victim which constituted legal provocation so as to require a voluntary manslaughter charge. Here, the evidence did not support a voluntary manslaughter charge. Therefore, trial counsel was not deficient for requesting a charge on voluntary manslaughter. Further, the petitioner has not shown prejudice. As the record supports the PCR judge's conclusion that trial counsel was not ineffective, this claim should be dismissed.

**Ground Two**

In Ground Two, the petitioner alleges trial counsel was ineffective in allowing Alexandria Stathakis, an attorney, to be seated as a juror. The PCR Court denied the petitioner relief on this issue. The respondent contends this was a reasonable application of *Strickland.* The undersigned agrees.

The PCR Court noted that everyone knew that Stathakis was an attorney and trial counsel thought she would be a favorable juror for the petitioner. Further, the PCR Court noted that trial counsel stated he did not challenge Stathakis for cause because he had no basis for the motion. The PCR Court concluded that Stathakis' status as an attorney provided no ground for disqualification and that the petitioner had failed to set forth any reason that Stathakis was disqualified to serve as a juror. (App. 449-51.) Trial counsel testified that he was aware that Stathakis was an attorney and that he had prior good experience with placing lawyers on juries. (App. 418-19.)

The record clearly shows the participants all knew that Stathakis was an attorney. Thus, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of

facts in light of the state court record. Thus, this ground is without merit and should be dismissed.

**Ground Three**

In Ground Three, the petitioner asserts that trial counsel was ineffective in allowing pencils and writing pads to be distributed to the jurors. He alleges that the jurors were exposed to notes from the solicitor in the notepads and trial counsel failed to object or move the trial court to review and secure the notepads to preserve the record. The PCR Court denied the petitioner relief on this claim. The respondent contends this was a reasonable application of *Strickland*. The undersigned agrees.

The PCR Court found that the petitioner had failed to show that the jury was affected by any outside influence because the transcript reflects the trial judge asked the clerk of court to provide notepads and pencils to the jurors, not the solicitor. (App. 450-451.) Further, the PCR Court noted that the record also reflects the trial court collected the notepads when the trial was in recess and prior to the verdict. (*Id.*) The PCR Court concluded that the solicitor did not distribute the notepads and the petitioner had failed to establish there was anything written on the notepads when given to the jurors and that the petitioner's claims were pure speculation and completely lacking in credibility. (*Id.*)

The record clearly supports shows that the jury was not provided notepads by the solicitor and the petitioner has not presented any evidence otherwise. The petitioner's allegations are nothing more than speculation. Thus, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit and should be dismissed.

**Ground Four**

17

In Ground Four, the petitioner alleges trial counsel was ineffective for failing to object to testimony. The petitioner contends that school records show Regina Evans' intelligence test score of 53 fell within the range of mental retardation rendering her incompetent as a witness and Reginald Pressley was incompetent because he suffered from dementia. He alleges trial counsel should have requested an in camera hearing to determine the competency of these witnesses. The PCR Court found trial counsel was not ineffective. The respondent contends this was a reasonable application of *Strickland*. The undersigned agrees.

The PCR Court noted that trial counsel testified he was aware of the medical records and mental status of these two witnesses, but he did not ask the trial court to rule upon the competency of the witnesses because trial counsel determined a challenge to the competency of the witnesses would not be successful. The PCR Court held that there was no evidence that Pressley lacked the ability to relate what he saw or to appreciate the duty to testify truthfully based upon the testimony offered and the range of dementia noted. Further, the PCR Court stated that the petitioner had failed to introduce Evans' school records. The PCR Court concluded there was no evidence that these witnesses were incompetent. The PCR Court found that trial counsel had properly pursued the competency of these witnesses through cross-examination in an effort to impeach their credibility. (App. 452-454.)

The Fourth Circuit presumes that witnesses are competent to testify, and holds that "[t]he only permissible grounds for disqualifying a witness as incompetent are that the witness does not have knowledge of the matters about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully." *United States v. Cassidy*, 48 Fed. Appx. 428, 445 (4th Cir. 2002). Furthermore, it is well-settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

18

Trial counsel testified that he was aware of Pressley's diagnosis of dementia and did not challenge his competency because he did not appear incompetent at the trial and further his testimony did not place anyone in the house. (App. 394-395.) Further, he testified that in his opinion, Pressley would not have been found incompetent. (App. 397-99.) As for Evans, trial counsel testified that he had her medical and school records, but he thought that there was no sound basis to challenge her competency. (App. 401-402.) Although trial counsel made a strategic decision not to request a competency hearing for these two witnesses, he brought out testimony regarding their competency. (App. 132-136; 140; 306; 307.) Accordingly, the petitioner has failed to show deficient performance or prejudice.

As the PCR court's rejection of the petitioner's ineffective assistance of counsel ground for relief did not result in an unreasonable application of *Strickland* and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. Accordingly, this claim should be dismissed.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (#12) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

*/s/ Bruce H. Hendricks*
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

September 22, 2008
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face

of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk  
United States District Court  
P.O. Box 10768  
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).